IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 1, 2026

## BRADLEY THOMAS MITCHELL v. J & B AUTO GROUP ET AL.

Appeal from the Chancery Court for Sullivan County
No. 25-CB-29028(S)      Steven Curtis Rose, Judge
_____

### No. E2026-00981-COA-T10B-CV
_____

This is an accelerated interlocutory appeal filed by the *pro se* petitioner relative to the underlying action involving sale of an automobile. Because the petitioner has not demonstrated a factual basis warranting recusal of the trial court judge, we affirm the judgment of the trial court denying the motion to recuse.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right;**
**Judgment of the Chancery Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Bradley Thomas Mitchell, Lebanon, Virginia, Pro Se.[1]

## OPINION

### I. Factual and Procedural Background

On November 10, 2025, petitioner Bradley Thomas Mitchell ("Petitioner") initiated this case in the Sullivan County Chancery Court ("trial court") by filing a complaint against various defendants ("Defendants") in relation to a purported auto sales transaction between Petitioner and the defendant company, J & B Auto Group, LLC ("J & B"). Spanning the ensuing months, Petitioner filed several motions, pleadings, notices to hearing, "lodged orders," affidavits, and other documents in the trial court. Defendants filed numerous motions in response.

---

[1] The appellees did not file briefs or otherwise participate in this appeal.

The trial court conducted hearings on January 23, 2026, and April 22, 2026, to address certain procedural matters and to consider some of the pending motions, including motions to amend the complaint that had been filed by Petitioner. Following the hearing on April 22, 2026, the trial court ordered Petitioner to file a second amended complaint ("Second Amended Complaint") no later than May 1, 2026, which Petitioner accomplished. The trial court set all remaining pending motions to be heard on July 8, 2026.[2]

In the Second Amended Complaint, Petitioner alleged twenty-one claims against Defendants, including violations of the Uniform Commercial Code ("UCC"), such as "invalid or void security interest," "failure of attachment," "wrongful claim of secured-party rights," "failure to provide statement of account," "noncompliant article 9 enforcement," "defective disposition," and "failure to prove commercial reasonableness"; breach of contract; breach of "good faith"; "unjust enrichment"; "disgorgement"; "false representations of existing material fact in connection with the August 2025 sale"; "non-execution" and forgery of lien and auto-title documents; "fraud in the inducement"; "fraudulent misrepresentation"; "fraudulent concealment" and "material omission"; "identity theft" and "unauthorized use of [Petitioner's] signature"; "unfair or deceptive acts" in violation of the Tennessee Consumer Protection Act ("TCPA"); violations of the "Federal Odometer Act"; "disclosure violations" of the TCPA; "mileage misrepresentation"; "money had and received"; civil conspiracy; negligent misrepresentation; failure to deliver and pay "dealer bond claim"; and bad faith.

On June 12, 2026, the trial court conducted a third hearing to address certain motions and procedural matters. Immediately following the June 12, 2026 hearing, Petitioner filed a "Combined Motion to Correct the Procedural Record Pursuant to Rule 60, or in the Alternative, Motion for Recusal Pursuant to Supreme Court Rule 10B." Therein, Petitioner requested that the trial court "equalize and correct the record" and afforded the court a "five-day window" to make the requested adjustments. Petitioner averred that he had timely filed the Second Amended Complaint upon the court's directive to do so but that the court had shown prejudice against Petitioner by subsequently referring to "prior, extinguished pleadings" to "chastise" Petitioner "in front of the entire court." Petitioner further claimed that the trial court had "entirely ignored" an affidavit presented by Petitioner demonstrating that, contrary to the evidence presented by Defendants, Petitioner had not signed a "VSA-17A title application" in conjunction with the purported purchase of the subject automobile. Petitioner further maintained that the trial court had colluded with defense counsel to "invent a retroactive cover" to avoid default on behalf of two of the defendants who had failed to include certificates of service on certain motions they had filed.

---

[2] After Petitioner appealed the order denying recusal to this Court, Petitioner filed a motion to stay all proceedings in the trial court, which this Court denied by order entered on July 8, 2026.

Under a section of the motion to recuse entitled, "The Chancellor's Breach of Ministerial Duty and Systemic Due Process Violations," Petitioner initiated several complaints against the trial court judge.[3]  Petitioner alleged that the trial court possessed "little to no knowledge" of the specific matters and operative pleadings of the case and had failed to "read the filings" or "review the file," demonstrating a pattern of "procedural neglect" that amounted to a violation of Petitioner's right to due process.  In support of this claim, Petitioner averred that the trial court had "completely sidestepped" information provided by Petitioner demonstrating that opposing counsel had been suspended by the Tennessee Board of Professional Responsibility.  Petitioner additionally claimed that the court had ignored proof that J & B had improperly filed a combined motion for extension of time and for sanctions.

In a section of the motion to recuse entitled, "Alternative Motion for Immediate Recusal Under Tenn. S. Ct. R. 10B," Petitioner proffered the following demand:

> Plaintiff respectfully requests that the Court correct and clarify the record within five (5) days, or strictly prior to the entry of any order arising from the June 12, 2026 hearing, to accurately reflect the May 1, 2026 Second Amended Complaint as the sole operative pleading, the proper status of all added parties, and the strictly responsive nature of Plaintiff's filings.

> If the record is not corrected, or if an order is entered arising from the June 12, 2026 hearing based upon an unread or incorrect operative posture, Plaintiff hereby preserves all rights to seek extraordinary review, formal judicial-conduct review, statutory sanctions, or any other relief available by law.

> ALTERNATIVE MOTION FOR RECUSAL:  If the Chancellor maintains that his failure to review the record across multiple hearings, his tolerance of hidden administrative hurdles, his failure to enforce the separate-motion mandate and safe-harbor protections of Rule 11, his side-stepping of the [Board of Professional Responsibility's] express reservation and litigation directives regarding defense counsel's systemic misconduct, his alleged and astutely recognized conversational collusion to invent a retroactive cover for the defendants' failure to execute proper service certificates on lawfully added additional defendants, and his failure to address documented fabrications, conflicting regulatory statements, verified law enforcement victim status designations, class-implications, and blatant fraud upon the court at the June 12, 2026 hearing were proper or by

---

[3] Petitioner refers to the trial court judge as "Chancellor" throughout the motion to recuse and this appeal.  However, Judge Steven Curtis Rose is a circuit court judge.  It appears that Judge Rose presided over this action by interchange although the record contains no order to that effect.

- 3 -

disallowing Plaintiff['s] filed Show Cause or Temporary Injunctive Motions to be heard while simultaneously entertaining an Improperly formed rule 11 motion to be heard by [Defense counsel], who on page 7 of his motion identified himself as Attorney for Plaintiff, his impartiality is completely compromised. Pursuant to Tennessee Supreme Court Rule 10B, Plaintiff demands that the Chancellor immediately recuse himself from all further proceedings in this matter and submit himself to the appropriate authorities for discipline.

(Paragraph numbering omitted.)

On June 18, 2026, the trial court entered an order denying Petitioner's motion to recuse.[4] The order included a procedural history of the case in which the court addressed what the court perceived to be Petitioner's frustration with the proceedings due to Petitioner's "fundamental misunderstanding of procedure rules, local rules of court and baseline mistrust in the judicial system." The trial court stressed that the court, and not Petitioner, maintained control over the court docket and proceedings.

Addressing Petitioner's issues raised relative to the hearing that had been set for June 12, 2026, the trial court acknowledged that Petitioner had properly filed several motions to be heard that day. However, the court explained that according to the trial court's local rules, Petitioner's motions could not be heard on June 12, 2026, because that date had previously been designated as a "motion day" in the trial court, during which only motions that would take less than thirty minutes could be heard. The trial court further explained:

> What is not explicitly stated in [the Local Rules], but implied both by the inherent power of the Court to control the docket and the discretion of the trial judge, is an understanding and knowledge of the parties and the issues before the Court. The Court is well familiar with this case, the parties involved and the manner in which the motions are argued. The Court knew that the matters noticed were not appropriate for a Motion Day which is why they were all summarily continued to the July 8, 2026 date.

The trial court next addressed each enumerated paragraph of the recusal motion in detail. The court determined that the first five paragraphs of the recusal motion did not comply with Rule 10B because they failed "to set forth with specificity the factual and legal grounds" supporting disqualification. *See* Tenn. R. Sup. Ct. 10B, § 1.01. Regarding

---

[4] The trial court included in the June 18, 2026 order a "preliminary statement," explaining that Petitioner's motion was "procedurally odd" because Petitioner had attempted to combine a Rule 60 motion with a motion for recusal. After reviewing the motion and granting "liberal reading and deference" to Petitioner as a *pro se* litigant, the trial court construed the motion as a motion for recusal and not a motion pursuant to Rule 60.

Petitioner's claim that the trial court had "chastised" Petitioner "in open court," the court surmised that Petitioner was referring to a "conversation that occurred in the June 12, 2026 hearing" related to Petitioner's Second Amended Complaint. In his "Motion for Leave to Amend" the complaint, Petitioner had sought to add additional defendants to the lawsuit. In the order denying recusal, the court stated that it "did not chastise" Petitioner, but "did point out that [the court] did not recall" whether Petitioner had sought leave to add defendants to the Second Amended Complaint. According to the trial court, the court had asked an "officer of the court" whether Petitioner had indeed filed a motion to add the defendants. The court explained that it had conducted that conversation in open court, not to chastise Petitioner, but rather to avoid an improper "*ex parte* conversation" between the court and defense counsel in chambers outside of Petitioner's presence. Additionally, the court noted that there had been "no ruling and no action taken" respecting the potential addition of three defendants to the action.

The trial court next addressed Petitioner's accusation—articulated in paragraphs three and eleven of the motion to recuse—that the court had shown bias against Petitioner by not addressing defense counsel's suspension by the Tennessee Board of Professional Responsibility. The court responded that although the attorney had indeed been suspended, he had never appeared before the court in violation of any suspension order. The court also noted that the attorney's suspension had gone into effect on February 21, 2026, and had been lifted three days later, on February 24, 2026.

Concerning paragraph six of Petitioner's motion to recuse, wherein Petitioner had stated that Petitioner's motions did not need to be argued in court but could instead be considered on the written filings, the trial court noted that oral argument on the motions was required by the court's local rules. The court further determined that paragraph six was not in compliance with the specificity requirements of Rule 10B, § 1.01. Regarding the assertions in paragraphs seven, eight, and ten—that the trial court judge lacked knowledge of the "true posture" of the case, had not reviewed the court file, and was not prepared for the hearings—the trial court declared that these statements were false and that Petitioner's allegations to this effect amounted to a "profound and baseless attack on the credibility and integrity of the Court." Addressing Petitioner's contention that the court had intentionally refused to place certain of Petitioner's motions on the court docket, the court determined that this accusation was vague and lacked specificity and therefore did not comport with Rule 10B. The court recognized that when scheduling court dockets, occasional "mistakes are made" but emphasized that any such mistakes or omissions "in no way establish[] a bias or gross miscarriage of justice" or a violation of due process.

As to paragraph nine, the trial court addressed Petitioner's claim that the court had engaged in a "secret procedure" by requiring Petitioner to "cc" the judge's assistant's email address "on all matters." The court clarified that no such requirement existed but explained that the practice of including the judge's assistant on emailed notices "helps to ensure that matters are set" and to "ensure matters don't fall through the cracks." As to paragraph ten,

- 5 -

the court assured Petitioner that although the court would not hear certain types of motions on certain days per the trial court's local rules, Petitioner had "not been blocked" from having access to the court but had merely been "constrained by the types of motions and matters" the court would consider on "motion days."

The trial court continued by noting that in paragraphs twelve, thirteen, fourteen, and fifteen of the recusal motion, Petitioner had raised issues that had not yet been considered and ruled upon by the trial court. The trial court reminded Petitioner that the procedure used by the trial court when considering motions and conducting the court docket was "within the sound discretion" of the court. The trial court also determined that none of the allegations in paragraphs twelve through fifteen complied with the requirements of Rule 10B, § 1.01.

The trial court next addressed paragraphs sixteen, seventeen, and eighteen of the recusal motion, wherein Petitioner averred that the court had "failed to read the filings" of the case; had acted in a "blind and non-responsive manner"; had exhibited a "systemic failure to read or recognize" filings proffered in the case by Petitioner; and had failed to "acknowledge, read, or comprehend the motions, pleadings, and binding agreements" filed in the case, resulting in violation of Petitioner's right to due process. The court rejected these accusations, explaining that Petitioner would have an opportunity to be heard during the July 8, 2026 hearing and that the trial court was not required to acknowledge or respond to "every single document" that Petitioner "thrusts upon the doorstep of the court." The trial court clarified that the court was responsible for providing "equal and unbiased treatment of the litigants before it" and that such would be provided during the upcoming hearing.

Paragraph nineteen of the recusal motion did not include a specific allegation but recited Petitioner's general frustrations with the case, which the trial court addressed by acknowledging Petitioner's frustration and his general lack of understanding of the judicial process. In addressing paragraphs twenty through twenty-three of the recusal motion, the trial court noted that Petitioner had repeated the same arguments that had been presented in previous paragraphs and that the accusations contained within them were not specific but related instead to Petitioner's "general discontent of the judicial process."

After addressing each paragraph of the recusal motion, the trial court rendered the following conclusion:

> In *Boren v. Boren, P.C.*, 557 S.W.3d. 542 (Tenn. Ct. App. 2017), the Court stated the terms "bias" and "prejudice" generally refer to a state of mind o[r] attitude that works to predispose a judge for or against a party. To meet disqualification, the bias or prejudice must come from a personal character directed at the litigant or develop knowledge or bias from extrajudicial knowledge outside the case. [Petitioner] has not asserted any

facts in his Motion to articulate a bias toward him or a prejudice the Court has of a personal nature.

[Petitioner] asserts that lack of action by the Court amount[s] to bias and impartiality. The Court disagrees. In *Duke v. Duke*, 398 S.W.3d. 665 [](Tenn. Ct. App. 2012), the father in the divorce case sought recusal by the Judge. In that case, the judge had ruled against the father on several motions. The Court held that adverse rulings were not grounds for recusal. Here, [Petitioner] makes a similar argument in asserting that his perceived inaction by the Court in addressing his numerous issues raised in his filings is tantamount to siding with adversary counsel. Nothing could be further from the truth. This matter was only filed in November of 2025. The case is not even a year old yet and is already four volumes thick with over five hundred (500) pages in large part due to the filings and attached exhibits of [Petitioner]. The failure of the Court to act on those within [Petitioner's] perceived or expected timeline does not amount to bias or prejudice.

Under the objective test, as established in Tennessee, a judge must recuse himself under the rule of judicial conduct in any proceeding in which the judge's impartiality might reasonably be questioned, if [a] person of ordinary prudence in [the] judge's position, knowing all facts known to the judge, would find reasonable basis for questioning the judge's impartiality. *See Adams v. Dunavant*, 674 S.W.3d 871 (Tenn. 2023). Here, there is nothing in the motion that cites to actions demonstrating impartiality. The Court has made every attempt to treat [Petitioner] with fairness, balancing that fairness to the fairness to adversary litigants. While certain accommodation will be afforded to [Petitioner] for drafting and content, the Court will not relax any substantive or procedural obligation. *See Young v. Barrow*, 130 S.W.3d 59 (Tenn. Ct. App. 2003).

[Petitioner] is dissatisfied with the expediency with which the Court is addressing his grievances. This does not establish bias or impartiality. The fact that the Court engaged an officer of the Court in matters of housekeeping for a voluminous record does not establish bias and the fact that the Court warned [Petitioner] that he could face procedural challenges from the Defendants hardly amounts to an admonishment or chastising. To the contrary, [Petitioner] was alerted to potential challenges that may or may not become material. With respect to the issues of inaction with [defense counsel] and his issues with the Board of Professional Responsibility, the Court will address those matters [a]s appropriate and material. If [Petitioner] wants to pursue a referral in front of Board of Professional Responsibility, he is free to do so. Tennessee Supreme Court Rule 10B, [§] 1.01 requires the movant to state with specificity the factual and legal reasons justifying

recusal. [Petitioner] has not set forth sufficient grounds that justify the recusal and his motion is hereby DENIED.

Petitioner timely filed this interlocutory appeal.

## II. Standard of Review

We recognize that Petitioner is a *pro se* litigant and respect his decision to proceed self-represented. Regarding self-represented litigants, this Court has explained:

> *Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden. Conducting a trial with a pro se litigant who is unschooled in the intricacies of evidence and trial practice can be difficult. Nonetheless, trial courts are expected to appreciate and be understanding of the difficulties encountered by a party who is embarking into the maze of the judicial process with no experience or formal training.

*Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988) (internal citations omitted). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). This Court must "be mindful of the boundary between fairness to a *pro se* litigant and unfairness to the *pro se* litigant's adversary." *Id*. Furthermore, "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts." *See Chiozza v. Chiozza*, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009) (quoting *Whitaker v. Whirlpool Corp*., 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)).

With respect to recusal motions filed pursuant to Tennessee Supreme Court Rule 10B, our Supreme Court has instructed:

> "Tennessee litigants are entitled to have cases resolved by fair and impartial judges." *Cook v. State*, 606 S.W.3d 247, 253 (Tenn. 2020) (citing *Davis [v. Liberty Mut. Ins. Co.]*, 38 S.W.3d [560,] 564 [(Tenn. 2001)]); *see also State v. Griffin*, 610 S.W.3d 752, 757-58 (Tenn. 2020). To preserve public confidence in judicial neutrality, judges must be fair and impartial, both in fact and in perception. *Cook*, 606 S.W.3d at 253; *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). To these ends, the Tennessee Rules of Judicial Conduct ("RJC") declare that judges must "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the

appearance of impropriety."   Tenn. Sup. Ct. R. 10, RJC 1.2.   Another provision declares that judges "shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially."  *Id.*, RJC 2.2.

To act "impartially" is to act in "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge."  *Id.*, Terminology.  "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned."  *Id.*, RJC 2.11(A).

Rule of Judicial Conduct 2.11 "incorporates the objective standard Tennessee judges have long used to evaluate recusal motions."  *Cook*, 606 S.W.3d at 255.  "Under this objective test, recusal is required if 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'"  *Id.* (quoting *Davis*, 38 S.W.3d at 564-65).

The intermediate appellate courts have explained that the proponent of a recusal motion bears the burden of establishing that recusal is appropriate and that any alleged acts of bias or prejudice arise from extrajudicial sources rather than from events or observations during the litigation of the case.  *Tarver v. Tarver*, No. W2022-00343-COA-T10B-CV, 2022 WL 1115016, at *2 (Tenn. Ct. App. Apr. 14, 2022).  A trial judge has a duty to serve unless the proponent establishes a factual basis warranting recusal.  *Raccoon Mtn. Caverns and Campground, LLC v. Nelson*, No. E2022-00989-COA-T10B-CV, 2022 WL 3100606, at *3 (Tenn. Ct. App. Aug. 4, 2022) (quoting *Rose v. Cookeville Reg'l Med. Ctr.*, No. M2007-02368-COA-R3-CV, 2008 WL 2078056, at *2 (Tenn. Ct. App. May 14, 2008)).

*Adams v. Dunavant*, 674 S.W.3d 871, 878-79 (Tenn. 2023).  "To disqualify [a trial judge], prejudice must be of a personal character, directed at the litigant, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case." *Alley v. State*, 882 S.W. 2d 810, 821 (Tenn. Crim. App. 1994) (internal quotation marks and citations omitted).

Tennessee Supreme Court Rule 10B also governs appeals from orders denying a motion to recuse.  The standard of review respecting such orders is *de novo* with no presumption of correctness.  *See* Tenn. Sup. Ct. R. 10B, § 2.01.  Regarding the scope of review in a Rule 10B appeal, this Court has explained:

[T]he only order this Court may review on a Rule 10B accelerated

- 9 -

interlocutory appeal is the trial court's order denying the motion to recuse. *Duke* [*v. Duke*], 398 S.W.3d [665,] 668 [(Tenn. Ct. App. 2012)]. Under Rule 10B, we may not "review the correctness or merits of the trial court's other rulings. . . ." *Id.*; *see also Stark* [ *v. Stark*], [W2019-00901-COA-T10B-CV,] 2019 WL 2515925, at *8 [(Tenn. Ct. App. June 18, 2019)] ("[W]hether the trial judge erred in his rulings on Husband's motions is not an issue in this limited, interlocutory appeal.").

*Adkins v. Adkins*, No. M2023-00384-COA-T10B-CV, 2021 WL 2882491, at *17 (Tenn. Ct. App. Apr. 15, 2021). Ergo, the narrow issue before us in this Rule 10B appeal is "whether the trial court erred in denying the motion for recusal." *See McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *1 (Tenn. Ct. App. Feb. 11, 2014) (internal citation omitted). We may, in our discretion, decide the appeal without oral argument. *See* Tenn. Sup. Ct. R. 10B, § 2.06.

## III. Analysis

Upon careful review of the petition and attachments, we determine that our disposition of this matter does not require an answer, additional briefing, or oral argument, and we therefore elect to act summarily on this appeal in accordance with sections 2.05 and 2.06 of Rule 10B. *See* Tenn. Sup. Ct. R. 10B, § 2.05 ("If the appellate court, based upon its review of the Petition for recusal appeal and supporting documents, determines that no answer from the other parties is needed, the court may act summarily on the appeal. Otherwise, the appellate court shall order that an answer to the petition be filed by the other parties. The court, in its discretion, also may order further briefing by the parties within the time period set by the court."), § 2.06 ("An accelerated interlocutory appeal shall be decided by the appellate court on an expedited basis. The appellate court's decision, in the court's discretion, may be made without oral argument.").

At the outset, we note that Petitioner has raised several arguments that are not within the scope of our review because he seeks review of trial court decisions that lie outside the order denying recusal. *See Adkins*, 2021 WL 2882491, at *17 (quoting *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012)) ("[T]he only order this Court may review on a Rule 10B accelerated interlocutory appeal is the trial court's order denying the motion to recuse."). Petitioner's claims that lie beyond the scope of our review include his allegations that the trial court (1) rejected Petitioner's attempt to obtain dismissal of a counterclaim; (2) systematically failed during the litigation to act on Petitioner's court filings and conducted "procedural acceleration"; (3) systematically failed to address "bad-faith manipulation of judicial records" by Defendants; (4) failed to review and comprehend material filings; (5) questioned the validity of Petitioner's Second Amended Complaint; (6) ignored the "operative procedural landscape" by entering a "retroactive order" on May 12, 2026; (7) refused to allow Petitioner to add defendants to the lawsuit while ignoring defendant J & B's procedural mistakes; (8) sheltered Defendants by "casting aside its own

- 10 -

record" and "framing arguments" in their favor; (9) suffered from "memory lapses" that caused the court to insulate Defendants from their procedural missteps; (10) allowed Defendants to "manipulate the timeline" of the lawsuit; (11) failed to prepare for the April 22, 2026 hearing; (12) failed to read Petitioner's filings to prepare for the June 12, 2026 hearing; (13) relied on "an informal judge's-assistant notice channel as an administrative workaround," as evinced by the passing of a "judicial assistant's personal email" to Petitioner during the April 22, 2026 hearing; (14) failed to "file-stamp and return filings" resulting in a "total freeze in filing access" experienced by Petitioner; (15) tolerated opposing counsel's purported violations of Tennessee Rule of Civil Procedure 5 during the June 12, 2026 hearing; (16) "forced" Petitioner to defend a sanctions motion filed by opposing counsel; (17) failed to address Petitioner's motion for injunctive relief during the June 12, 2026 hearing; (18) failed to address papers provided by Petitioner to contradict opposing counsel's "official corporate account ledger"; (19) questioned Petitioner during the January 23, 2026 hearing regarding his reliance on "Virginia law in a Tennessee case"; and (20) failed to address opposing counsel's suspension by the Tennessee Board of Professional Responsibility. Because these issues lie outside the scope of our review in this accelerated appeal, we do not reach these issues in this Opinion. *See Duke*, 398 S.W.3d at 668; *Adkins*, 2021 WL 2882491, at *17.

In addition to the above purported actions by the trial court judge, Petitioner raises various complaints about the behavior of the adverse parties in the underlying litigation as well as about the Sullivan County Clerk and Master's Office. As with the above-delineated claims related to actions of the trial court judge not associated with the recusal motion, the purported actions of the clerk and master's office and defense counsel also fall outside the scope of our review in this appeal. *See id.*

Petitioner does raise certain issues related to the order denying recusal, and these are proper subjects for our review. Petitioner alleges, *inter alia*, that the "tone of the [trial court's] denial [of the recusal motion] speaks volumes, serving as a vehicle for the further admonishment and castigation" of Petitioner. However, Petitioner does not provide any supporting details explaining which portions of the order he finds objectionable and does not cite to relevant authorities to support this argument. Accordingly, we find that in asserting this claim, Petitioner has not complied with Rule 10B because he has failed to set forth the relevant facts and citations to authorities in support of this broad accusation. *See* Tenn. Sup. Ct. R. 10B, § 2.03(b) and (c) ("The petition for recusal appeal shall contain . . . [a] statement of the facts, setting forth the facts relevant to the issues presented for review[, and a]n argument . . . with citations to the authorities[.]"). Furthermore, upon our independent review, we do not discern any "tone" through language incorporated in the order denying recusal that would cause a reasonable, disinterested person to believe that the trial court judge's impartiality might reasonably be questioned. *See Duke*, 398 S.W.3d at 671 (quoting *Eldrige v. Eldridge*, 137 S.W.3d 1, 7-8 (Tenn. Ct. App. 2002) ("[A] party challenging the impartiality of a judge 'must come forward with some evidence that would

prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned.'")).

The balance of Petitioner's remaining claims arise from Petitioner's observations and assumptions related to the trial court's rulings, comments, or perceived failures to act during the litigation of the underlying case. Therefore, upon review of these claims, we determine that Petitioner has not satisfied his burden to establish that the trial court exhibited bias or prejudice arising from an "extrajudicial source." *See Adams*, 674 S.W.3d at 878-79 (explaining that the proponent of a motion to recuse "bears the burden of establishing that recusal is appropriate and that any alleged acts of bias or prejudice arise from extrajudicial sources rather than from events or observations during the litigation of the case.") (internal citation omitted); *Alley*, 882 S.W.2d at 821.

Petitioner alleges that the order denying recusal characterized Petitioner's filings as "merely voluminous, confusing, mistrustful, frustrating, and procedurally misunderstood" and that the trial court so determined to avoid "confronting or engaging" the material issues raised by Petitioner. Petitioner's claim related to the trial court's statements about Petitioner's filings arose entirely from the trial court's rulings and actions in the underlying proceeding. Therefore, Petitioner has not alleged, and has provided no proof, that the trial court's characterization of Petitioner's filings arose from bias stemming from an "extrajudicial source" that would warrant recusal. *See Adams*, 674 S.W.3d at 878-79; *Alley*, 882 S.W.2d at 821. Moreover, "[r]ulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *See Duke*, 398 S.W.3d at 671 (quoting *Alley*, 882 S.W.2d at 821).

Furthermore, the contents of the application before us do not support Petitioner's assertion that the trial court was attempting to avoid engaging with Petitioner's pleadings and filings. The trial court repeatedly instructed Petitioner in the order denying recusal that any remaining substantive issues that Petitioner desired to address, including issues raised regarding the trial court judge's conduct, would be heard at the then-pending July 8, 2026 hearing. These instructions directly contradict Petitioner's claim that the trial court was attempting to avoid addressing Petitioner's motions and pleadings. For the same reasons, we disagree with Petitioner's claim that the trial court exhibited prejudice against Petitioner by characterizing Petitioner's filings as "papering the court" while at the same time "ignoring the core equitable issues sitting unresolved." As with Petitioner's postulate that the trial court ignored unresolved, material issues, the trial court expressly stated that Petitioner would have the opportunity to present each of his contentions and issues during the July 8, 2026 hearing.

Petitioner also claims that in the order denying recusal, the trial court "falsely characterized" Petitioner as having been unprepared for the April 22, 2026 hearing. Petitioner is correct that the trial court included in the order denying recusal that Petitioner "was not prepared" for that hearing. Without the benefit of a transcript from that hearing,

- 12 -

we cannot determine whether the trial court properly assessed Petitioner's readiness for the hearing. However, such conclusion is not necessary because the trial court's observation that Petitioner was unprepared was directly related to events associated with the litigation of this case. Therefore, the statement does not warrant recusal because it does not stem from perceived bias arising from an extrajudicial source. *See Adams*, 674 S.W.3d at 878-79; *Alley*, 882 S.W.2d at 821. Moreover, it is within a trial court's authority in managing the court's docket to expect a party to be prepared for court, even if that party is appearing *pro se*. *See Hessmer*, 138 S.W.3d at 903 (explaining that courts "must not excuse *pro se* litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.").

Petitioner next alleges that following the June 12, 2026 hearing, Petitioner "experienced a total freeze in filing access" until June 18, 2026, the date that the trial court entered its order denying Petitioner's motion to recuse. Respecting the trial court judge's actions, Petitioner asserts:

> A public court's constitutional duty to maintain equal filing access cannot depend entirely on the physical presence of a single staff member while emergency, record-sensitive matters are pending. The sudden, total lockdown of this previously seamless electronic channel occurred only after judicial recusal was joined as an issue at the June 12 hearing. No administrative forwarding or backup coverage was deployed, leaving emergency applications frozen and unreturned until June 18, 2026—the exact same day Chancellor Rose entered his order denying the recusal motion (Plaintiff's Sworn Personal Statement detailing this systemic withholding of file-stamps is attached hereto sequentially as Exhibit BB). This simultaneous timeline creates an objective appearance that Plaintiff's filings were intentionally delayed or selectively stalled pending the court's unfavorable recusal ruling.

(Paragraph numbering omitted.)

Petitioner implies that the trial court intentionally "delayed or selectively stalled" Petitioner from filing additional documents during the days between the June 12, 2026 hearing and entry of the order denying recusal on June 18, 2026. However, Petitioner does not provide any evidence to support this claim other than an email he received on June 18, 2026, from the deputy clerk of court apologizing to Petitioner and stating that she had been "out of the office." We note that the purported action of the deputy clerk of court falls outside the scope of our review in this recusal appeal. *See Adkins*, 2021 WL 2882491, at *17. Significantly, Petitioner does not argue or provide any proof that the trial court judge was involved in the purported delay or "freezing" of the court's filing system. Ergo, Petitioner has not demonstrated a sufficient basis for recusal of the trial court judge relative to this issue.

- 13 -

Moreover, as Petitioner acknowledged when he electronically filed his recusal motion on June 12, 2026, the filing of a recusal motion under Rule 10B automatically results in an immediate stay of trial court proceedings until the court rules on the motion to recuse. *See* Rule 10B, § 1.02 ("While the motion [for recusal] is pending, the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated in the order in which such action is taken."). Hence, once Petitioner filed his motion to recuse, the trial court was required to "take no further action on the case" until the court ruled on Petitioner's recusal motion. *See id.* Additionally, as with Petitioner's other claims recounted above, Petitioner contends that the purported delay by the court in processing Petitioner's filings was directly related to decisions stemming from the underlying litigation and not from bias related to an extrajudicial source. *See Adams*, 674 S.W.3d at 878-79; *Alley*, 882 S.W.2d at 821.

Finally, Petitioner alleges that the trial court relied on "an exclusive, back-room tier of chambers procedures that bars *pro se* citizens from equal access." Petitioner appears to be referring to the conversation that occurred between the trial court and counsel representing one of the Defendants during the June 12, 2026 hearing regarding whether a motion to join additional defendants had been filed. In support, Petitioner quotes from the order denying recusal as follows:

> Typically, any "housekeeping matters" could be resolved in chambers, with counsel of record, however, such conversation here would have excluded [Petitioner] and would amount to an *ex parte* conversation and would be entirely improper.

Petitioner urges that this portion of the order amounted to a "recorded confession" by the trial court that there exist "fundamental elements of track management" that are "reserved for licensed members of the bar" to the exclusion of *pro se* litigants.

We disagree. First, Petitioner did not include the trial court's explanatory sentence directly preceding the above excerpt, in which the court explained that it had "elected to have this conversation [with defense counsel] in open Court in front of [Petitioner] <u>because</u> he is a *pro se* litigant." (Emphasis added.) In so doing, the trial court ensured that the communication between the court and opposing counsel would occur in Petitioner's presence so that Petitioner would not question whether the court was conducting *ex parte* communications behind closed doors. Contrary to Petitioner's accusation, we determine that in conducting the conversation in open court, the trial court acted "in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary" and comported with the rules of judicial conduct by avoiding "impropriety and the appearance of impropriety." *See* Tenn. Sup. Ct. R. 10, RJC § 1.2.

Second, it was proper for the trial court to communicate with an attorney, in the presence of Petitioner, to determine what motions remained pending in the litigation. The conversation, which Petitioner had full opportunity to hear and address in court, reflects the long-recognized inherent power and responsibility of the trial court to manage and control its own docket. *See State v. Benn*, 713 S.W.2d 308, 310 (Tenn. 1986); *see also Adams*, 674 S.W.3d at 879. Finally, as with Petitioner's other issues presented for our review, the conversation to which Petitioner objects related entirely to the underlying litigation and did not demonstrate bias resulting from an extrajudicial source. Therefore, recusal is not warranted in the case at bar. *See Adams*, 674 S.W.3d at 878-79; *Alley*, 882 S.W.2d at 821.

## IV. Conclusion

For the above-stated reasons, we affirm the trial court's June 18, 2026 order denying Petitioner's motion for recusal. This case is remanded to the trial court for further proceedings consistent with this Opinion. Costs on appeal are assessed to the petitioner, Bradley Thomas Mitchell.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE